# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-191-DCK

| | |
|---|---|
| DUNCAN E. GILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NATIONAL RAILROAD PASSENGER ) | |
| CORPORATION, and AMTRAK, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion For Summary Judgment" (Document No. 29). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will <u>grant</u> the motion.

## I.  BACKGROUND

Plaintiff Duncan E. Giles ("Plaintiff" or "Giles") initiated this action against National Railroad Passenger Corporation and Amtrak with the filing of a "Complaint" on April 18, 2019. (Document No. 1). Plaintiff alleges in his Complaint that "he was suspended and subsequently terminated based upon his race" in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"). <u>Id.</u> at p. 1. Furthermore, he contends that "he was retaliated against for opposing practices prohibited by § 1981." <u>Id.</u> Section 1981 states in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens…" 42 U.S.C. § 1981(a).

Plaintiff's claims for race discrimination under § 1981 arise out of his former employment as a train conductor with Amtrak. Id. at p. 2. Plaintiff first began his employment with Amtrak in 1999 as a train attendant, later transitioning to the role of train conductor in 2009. Id.; (Document No. 34, p. 1). The facts in this case stem from an incident on April 19, 2015,[1] in which Plaintiff allegedly refused an order from Trainmaster Amy Sine to "uncouple" or "cut" a train car from the rest of the train. (Document No. 1, p. 2); see also (Document No. 29-1, p. 1). According to Plaintiff's Complaint, Giles boarded the train in Raleigh, North Carolina. (Document No. 1, p. 2). Prior to getting on the train, Plaintiff spoke with his supervisor, Trainmaster Michael Hibbert, who indicated that a different trainmaster, Amy Sine, would be the supervising trainmaster in Raleigh. Id. Plaintiff contends that he did not know Sine "and did not even know what she looked like." Id. She allegedly "would have a crew with her who would take a private car off of the train in Raleigh." Id. Plaintiff's understanding from this conversation with Hibbert, he alleges, was that "he was not responsible for removing the private car from the train." Id. His response brief to Defendant's memorandum indicates that when "Sine ordered Plaintiff and his crew to set out one of the cars, he initially refused." (Document No. 34, p. 2). However, once he later "learned who Sine was," he contends that he then "complied with her orders regarding the car that needed to be set out that day." Id. In Plaintiff's view, his refusal of Sine's order was motivated by his need to

---

[1] Although Plaintiff's Complaint indicates that the date of the incident was April 20, 2015 (Document No. 1), his response brief to Defendant's summary judgment motion and the summary judgment motion itself both indicate that the incident occurred on April 19, 2015. See (Document No. 29-1); (Document No. 34).

2

carry out "what his direct supervisor [Hibbert] told him to do—make sure the train left safely." Id. at p. 9.

Defendant's memorandum in support of its motion for summary judgment indicates that Giles was a member of the SMART—Transportation Division union during the incident at issue, giving him "certain protections set forth in the collective bargaining agreement (CBA) between SMART and Amtrak." (Document No. 29-1, p. 3). Defendant elaborates more fully than Plaintiff's Complaint in its recounting of the facts of the April 19 incident. Amtrak contends that Giles was required, per Amtrak's Standards of Excellence to "follow all instructions, directions and orders from supervisors and managers." Id. (internal quotations and citations omitted). Defendant contends that when Sine ordered Giles to uncouple one of the train cars, "Giles immediately questioned Sine's authority," and he "repeatedly refused to follow Trainmaster Sine's instructions." Id. at p. 4. Following these repeated refusals, Sine "contacted Trainmaster Hibbert to inform him that Giles refused to cut the train car and confirm that Giles should assist in the task." Id. at p. 5. Giles allegedly again refused Sine's subsequent order – after she received confirmation from Hibbert that Giles was to assist in the uncoupling. Id. A third round of refusals then allegedly ensued, according to Defendant. Hibbert then "also instructed him to perform the task as Sine had told him to do." Id. In Defendant's view, "Giles *still* refused." Id.

Defendant then contends that Sine was forced to perform Giles' role herself, in light of his refusals. She allegedly "held another job briefing with the crew to ensure they had a clear understanding of their responsibilities since she had added herself to the crew." Id. Even though, according to Defendant, "Giles was not a part of this second briefing," he later attempted to assist

with the uncoupling.  Id.  Sine ordered him to stop, given that he was not briefed on the crew's responsibilities and his "participation at that point posed a safety risk."  Id.

For his actions, "Plaintiff was charged with insubordination [which is the primary charge at issue in this case] and was immediately placed on suspension" while an investigation was conducted.  (Document No. 1, p. 2).  Amtrak contends both that insubordination is "a terminable offense due to its severity and adverse impact in the workplace" and under the CBA, insubordination is a "major offense" – the latter point of which Defendant contends Giles allegedly confirmed.  (Document No. 29-1, p. 8).  Because of his union membership, Giles was entitled to a disciplinary hearing on the charges, which was held on November 17, 201[5].  Id. at p. 6.  Defendant contends that "during the hearing (as in his deposition []), Giles *himself* testified that he refused to follow Sine's orders."  Id. at p. 7.  The hearing officer concluded "that Giles was insubordinate in his refusal to remove the car as ordered."  Id.  Amtrak then terminated Giles on November 25, 2015.[2]  Id. at p. 8.  Giles then allegedly appealed the hearing officer's decision twice – once to the Office of Labor Relations at Amtrak (appeal denied), and also to the Public Law Board through a grievance arbitration claim (also denied).  Id. at p. 8.

Plaintiff's Complaint states a single claim for race discrimination pursuant to 42 U.S.C. § 1981.  (Document No. 1, p. 3).  However, he also states on the first page of his Complaint that he additionally "alleges that he was retaliated against for opposing practices prohibited by § 1981."

---

[2] Plaintiff gives a variety of dates for his termination – listing November 28, 2015 as the date of his termination from Amtrak employment in the Complaint, and listing November 23, 2015 as the date of his termination in his response to Defendant's motion.  (Document No. 1, p. 2); (Document No. 34, p. 4).  Defendant gives a termination date of November 25, 2015 in its memorandum supporting its summary judgment motion.  (Document No. 29-1, p. 8).

Id. at p. 1.  The undersigned will therefore, as does Defendant,[3] construe Plaintiff's Complaint as stating two claims under § 1981 – one for disparate discipline and the second for retaliation.  He contends that while he was terminated for alleged insubordination, to his knowledge, "a white employee [Anthony Martino] who refused to perform work at the direction of his supervisor, Michael Hibbert, [was] not discharged from his employment."  Id.  He also contends that he "and other African Americans were subjected to racially offensive language and behavior by co-workers and managers[, including]…the use of racially offensive language by [Hibbert]."  Id.

Defendant filed the pending "Motion For Summary Judgment" (Document No. 29) on January 6, 2021.  Plaintiff filed a "Response To Defendant's Motion For Summary Judgment" (Document No. 34) on February 17, 2021.  Defendant filed a "Reply In Support Of Its Motion For Summary Judgment" (Document No. 36) on February 24, 2021.  The motion has now been fully briefed and is ripe for review and disposition.

## II. STANDARD OF REVIEW

The standard of review here is familiar.  Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).  Only disputes between the parties

---

[3] Defendant indicates that although "Giles has not listed a separate cause of action for retaliation," Amtrak will "presume[] that Giles intends to include a retaliation claim in this lawsuit" based on language in the Complaint. (Document No. 29-1, p. 21).

over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F. Supp. 2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

### III. DISCUSSION

**A. § 1981 Race Discrimination Disparate Treatment Claim**

Race discrimination claims filed under § 1981 are analyzed "using the burden-shifting framework established by" the McDonnell Douglas Corp. v. Green case. Parks v. Louisiana-Pacific Corp., 400 F. Supp. 3d 393, 412 (W.D.N.C. 2019) (citing 411 U.S. 792 (1973)). Pursuant to the McDonnell Douglas framework, "Plaintiff must first establish a prima facie case of disparate treatment." Parks, 400 F. Supp. 3d at 412. A prima facie case of racially discriminatory disparate treatment has four elements under § 1981. Plaintiff must show:

> (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) his job performance was satisfactory at the time of the adverse employment action; and (4) he was treated

>           differently from similarly situated employees outside his protected
>           class.

Id.

If Plaintiff successfully establishes a prima facie case of disparate treatment, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." McDonnell Douglas Corp., 411 U.S. at 802. If the employer can provide a legitimate reason for terminating Plaintiff, the burden then reverts back to Plaintiff to demonstrate that Amtrak's "stated reason for [his termination] was in fact pretext." Id. at 804. In the context of a § 1981 claim, Plaintiff's burden of proving causation is high: he must demonstrate that "race was a but-for cause of its injury." Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1014 (2020). Indeed, the Fourth Circuit recently reaffirmed that principle, stating, "it is not enough to show that race played some role in the defendant's decisionmaking process." Jones v. Lowe's Cos., Inc., 2021 WL 457927, at *7 (4th Cir. Feb. 9, 2021) (internal quotations and citations omitted). In order to prove but-for causation, "[t]he burden is on [Plaintiff] to show that racial considerations *caused* the adverse decision." Id.

Defendant makes various arguments in support of its motion for summary judgment, contending that Plaintiff fails at multiple steps in the McDonnell Douglas burden-shifting framework. First, Defendant contends that "Giles cannot establish a *prima facie* case of race discrimination." (Document No. 29-1, p. 13). Specifically, Amtrak contends that Giles fails on both the third and fourth prongs of the *prima facie* case for disparate treatment.

Evidently, Plaintiff satisfies the first and second prongs of the *prima facie* case – he is a member of a protected class on account of his race, and he suffered an adverse employment action

since he was terminated. Therefore, the following analysis will focus on the remaining prongs of the *prima facie* case.

   i.  **Giles Cannot Demonstrate Satisfactory Job Performance**

On the third prong, Defendant contends that Giles "has failed to demonstrate he performed his job satisfactorily." Id. at p. 15. The Court agrees. "In order to create a triable issue regarding [satisfactory job performance], a plaintiff must proffer evidence of a genuine dispute concerning whether, at the time of his dismissal, he was performing his job in a way that met the legitimate expectations of" Amtrak. Reid v. Dalco Nonwovens, LLC, 154 F. Supp. 3d 273, 285 (W.D.N.C. 2016) (internal quotations and citations omitted). Moreover, it is Amtrak's perception—not Giles'—that is relevant for the purposes of analysis on the satisfactory job performance prong. Pettis v. Nottoway Cty. School Bd., 980 F. Supp. 2d 717, 725 (E.D. Va. 2013) ("the Court looks to the perception of the decision maker in considering whether the employee was meeting job expectations at the time of dismissal"), *aff'd*, 592 F. App'x 158 (4th Cir. 2014); see also (Document No. 36, p. 8). If the employer acts in a way "that the statute does not prohibit, [the Court does] not judge the correctness, fairness, or wisdom of the employer's decision." Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 905 (4th Cir. 2017).

Amtrak "considers insubordination a terminable offense due to its severity and adverse impact in the workplace." (Document No. 29-1, p. 8). Furthermore, Amtrak contends that Giles' argument "that he does not perceive his refusal of Sine's order to amount to insubordination…is irrelevant." (Document No. 36, p. 8). As Defendant states, "Amtrak believed Giles's conduct was grossly inappropriate and warranted discharge." Id. Defendant argues that "Giles's own testimony[] reveals that [he] engaged in insubordination." (Document No. 29-1, p. 8).

Specifically, Plaintiff's deposition testimony indicates that before speaking with Hibbert on the phone, he "refused everything." (Document No. 29-3, p. 32). Moreover, Plaintiff's deposition testimony acknowledges that insubordination "is a serious charge." Id. at p. 47. Whether Giles believed that he was actually carrying out his duties communicated by Hibbert by refusing Sine's orders – no less than three times – is immaterial.

Thus, there is no genuine dispute of material fact on the third prong of the *prima facie* case for disparate treatment. Giles cannot prove that he was performing his job on April 19, 2015 in a way that met his employer's expectations. At bottom, Amtrak believed Giles' refusal to comply with Sine's order – which he does not dispute he did in fact do – to amount to insubordination. That is the end of the road for the satisfactory job performance prong. Giles did not meet expectations in the eyes of his employer.

ii. **Giles Cannot Demonstrate Disparate Treatment On The Fourth Prong Because Martino Is Not A Similarly Situated Comparator**

Even *if* Giles could demonstrate satisfactory job performance – which Defendant disputes – Defendant contends that he would also fail on the fourth prong of the *prima facie* test. Amtrak contends that Giles "has not shown that he was treated differently compared to similarly situated employees from a non-protected class" because he lacks admissible evidence regarding his alleged white comparator's more favorable treatment for alleged insubordination. (Document No. 29-1, pp. 15-16). Furthermore, Amtrak also contends that Martino is not a similarly situated comparator. (Document No. 36, pp. 4-5).

The Court agrees. Defendant is correct that the declarations of Marvin Johnson and Andre Chambers that Plaintiff submitted in support of its response opposing Amtrak's summary

judgment motion are inadmissible hearsay. See (Document No. 34-3); (Document No. 34-4). "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Maryland Highways Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991). Both declarants indicate that they overheard Martino speaking on the phone with supervisor Hibbert regarding his refusal to work the train route to Atlanta. (Document No. 34-3, p. 3); (Document No. 34-4, p. 3). These statements by Martino fall squarely within the definition of hearsay under Federal Rule of Evidence 801(c), for they are offered "to prove the truth of the matter asserted" (that is, that Martino was refusing Hibbert's order) and Martino did not make the statements during sworn testimony. Rather, Johnson and Chambers are merely conveying what they purport to have overheard. Because "[p]laintiff has not offered affidavits executed by [Martino] or [any] deposition testimony [from Martino] in which [he] acknowledge[s] having made the statements Plaintiff attributes to [him]," they cannot be considered. Parker v. Danzig, 181 F. Supp. 2d 584, 592 (E.D. Va. 2001). Nor do Martino's alleged statements fall within any hearsay exception under Federal Rule of Evidence 803 or any hearsay exclusion under Federal Rule of Evidence 801.

Even if Plaintiff had admissible evidence regarding the Martino incidents, he also fails on the fourth prong of the *prima facie* case for discriminatory disparate treatment because he cannot demonstrate that Martino is a similarly situated comparator. First, Plaintiff is wrong that he is "not required as a matter of law to point to a similarly situated comparator in order to prevail." (Document No. 34, p. 8). In fact, that is a requisite element of the *prima facie* case for a disparate treatment claim under § 1981. Irani v. Palmetto Health, 767 F. App'x 399, 420 (4th Cir. 2019). In order to demonstrate that an alleged comparator is similarly situated, Plaintiff must show some

10

equivalence – though it need not be "precise" – between the relative "harm caused or threatened to the victim or society, and the culpability of the offender." Sook Yoon v. Sebelius, 481 F. App'x 848, 850 (4th Cir. 2012) (quoting Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985)).

Martino's refusal of Hibbert's order that he work the train destined for Atlanta amounts to a refusal to comply with shift scheduling. His refusal – while perhaps inappropriate – could be easily remedied by a schedule change and a different employee to replace him. On the other hand, as Defendant points out, Giles' refusal is properly classified as a "safety violation[]." (Document No. 36, p. 5). Of course, both Martino and Giles refused a direct order from a superior. But in terms of potential harm caused by their respective refusals, Giles' refusal could have resulted in danger to others' safety, given that cutting a train from a car is a mechanical operation and requires team participation. Martino's refusal portended nothing of that sort – it did not require any imminent action, but rather it could be fixed by shifting the schedule around. Therefore, Giles cannot demonstrate that Martino is a similarly situated comparator – thus failing to demonstrate that there is a genuine dispute of material fact on the fourth prong of the *prima facie* test.

### iii. Giles Cannot Show That Amtrak's Decision To Terminate His Employment Was Pretextual Or That But-For His Race, He Would Not Have Been Terminated

Hypothetically, even if Plaintiff had satisfied his burden to demonstrate a *prima facie* case of disparate treatment under § 1981 (which he has not), Plaintiff's § 1981 disparate treatment claim would still fail because he cannot rebut Amtrak's legitimate, non-discriminatory reason for firing him: he was insubordinate. Pursuant to the McDonnell Douglas framework, if the employer has "produce[d] a legitimate, non-discriminatory reason for the adverse employment action," the burden would then shift back to Plaintiff "to show this reason was a pretext to disguise the true

[discriminatory] reason for [his] termination." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217 (4th Cir. 2016). Where Plaintiff can make a showing that Amtrak's "proffered explanation is unworthy of credence," he can demonstrate that Amtrak's reason for firing him was merely pretextual. Judon v. City of Charlotte, 2017 WL 5195883, at *5 (W.D.N.C. Nov. 9, 2017).

Plaintiff's own testimony supports Amtrak's position – evidently therefore undermining his own on the pretext front. Indeed, Plaintiff indicated in his deposition that he did not "believe that [he was] held out of service because of [his] race." (Document No. 29-3, p. 30). Thus, his own testimony supports Amtrak's legitimate, non-discriminatory reason for firing him and even *lends* credence to Defendant's position. He cannot show pretext when his own testimony negates that possibility. Furthermore, his deposition testimony supports Defendant's argument that Plaintiff's "so-called evidence of pretext is based only on his own speculation." (Document No. 29-1, p. 19). On summary judgment, "[m]ere speculation by the non-movant cannot create a genuine issue of material fact." JKC Holding Co. LLC v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280-81 (4th Cir. 2000) (where an employee "does nothing more than speculate that [his employer] terminated [him] out of racial animus," there is no showing of pretext because "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action" (citing Williams v. Cereberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989)).

Here, Plaintiff has done nothing more than speculate that Amtrak terminated him on account of racial animus. His Complaint baldly alleges that "Defendant's actions were taken based on Plaintiff's race." (Document No. 1, p. 3). There is nothing more in Plaintiff's Complaint to

connect the termination decision to race. He does mention that while an employee at Amtrak, he "and other African Americans were subjected to racially offensive language and behavior by co-workers and managers, [which]…included the use of racially offensive language by Plaintiff's supervisor, Michael Hibbert." Id. However, these comments allegedly made by coworkers and Michael Hibbert do not have any link with Giles' termination. Yes, Michael Hibbert was involved with the decision to hold Plaintiff out of service pending an investigation into the alleged insubordination that ultimately led to Plaintiff's termination. (Document No. 29-1, pp. 5-6). However, Plaintiff does not allege that these racially offensive remarks were made *in the context of* the termination decision – and Hibbert did not even make the termination decision. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" for denial of Defendant's summary judgment motion); see also Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001) ("although *statements directly related to the challenged employment action* may be highly probative in the pretext inquiry, [] mere generalized 'stray remarks,' arguably probative of *bias* against a protected class, normally are not *probative of pretext* absent some discernible evidentiary basis for assessing their temporal and contextual relevance"). Amtrak terminated him only after a full investigation and hearing. (Document No. 29-1, p. 2). In fact, Plaintiff does not provide any details regarding these remarks – a reader of the Complaint is left wondering when the comments occurred, and in what context. Without more, Plaintiff has certainly not satisfied his burden to prove that but-for his race, he would not have been terminated. Comcast Corp., 140 S. Ct. at 1019.

As Amtrak states, it "only terminated Giles's employment after a full disciplinary hearing where many witnesses testified to the details of Giles's insubordination." (Document No. 29-1, p.

17).  Only after the hearing officer concluded that the insubordination charge was proven did Amtrak terminate Giles.  Id. at p. 8.  The Court accepts Amtrak's proffered legitimate reason for Giles' termination.  It is not the role of the Court to "sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (internal citations and quotations omitted).  The Court is in no way excusing racially offensive comments made in the workplace.  The Court's conclusion merely rests upon case law indicating that it is not the judiciary's "province to decide whether the [proffered] reason [from the Defendant for Plaintiff's termination – here, insubordination] was wise, fair, or event correct, ultimately, so long as it truly was the reason for [P]laintiff's termination." Villa, 858 F.3d at 901.

Clearly then, since Plaintiff cannot prove that Amtrak's legitimate, non-discriminatory reason for firing him – his insubordination – was pretextual, he also cannot "prove that, but for race, [he] would not have suffered the loss of a legally protected right" under § 1981. Comcast Corp., 140 S. Ct. at 1019.  Since he has not made a showing of a genuine dispute of material fact that Amtrak's reason for firing him was pretextual or that race was the but-for cause of his termination, Defendant is entitled to summary judgment on Plaintiff's § 1981 disparate treatment claim.[4]

### B.  § 1981 Retaliation Claim

As stated in the Background section of this Order, the undersigned assumes that Plaintiff meant to state two claims under § 1981 – one for discriminatory disparate treatment, and another

---

[4] The undersigned concludes that Plaintiff's failure to satisfy the elements of a discriminatory disparate treatment claim pursuant to § 1981 and a retaliation claim pursuant to § 1981 are more than sufficient to entitle Defendant to summary judgment in this case.  Thus, the undersigned declines to address Defendant's argument regarding preclusion of the § 1981 claims by the Railway Labor Act.  (Document No. 29-1, pp. 9-12).

for retaliation. The first page of Plaintiff's Complaint indicates that "Plaintiff alleges that he was suspended and subsequently terminated based upon his race…[and] [h]e also alleges that he was retaliated against for opposing practices prohibited by § 1981." (Document No. 1, p. 1). Even though the Complaint then proceeds only to state one cause of action for "[r]ace [d]iscrimination," the undersigned presumes – as does Defendant – that "Giles intends to include a retaliation claim in this lawsuit." Id. at p. 3; (Document No. 29-1, p. 21).

However, Plaintiff's response brief to Defendant's motion makes no mention of the word "retaliation." See (Document No. 34). Defendant thus argues that since "Giles's opposition brief fails to reference a retaliation claim, [] any such claim is abandoned, to the extent it ever existed." (Document No. 36, p. 1, n.1). While the undersigned is persuaded by Defendant's argument on this point, the Court will nevertheless analyze whether Plaintiff can make out a *prima facie* retaliation claim.[5] Plainly, he cannot.

### i. Giles Cannot Establish A *Prima Facie* Case For Any Alleged Retaliation Claim

The McDonnell Douglas burden-shifting framework applies with equal force to a retaliation claim pursuant to § 1981, just as it does to the discriminatory disparate treatment claim discussed in the preceding section. Sanders v. Tikras Tech. Solutions Corp., 725 F. App'x 228, 229 (4th Cir. 2018) ("A plaintiff can establish a discrimination or retaliation claim under…§

---

[5] The Court finds persuasive authority from district courts in North Carolina suggesting that "[w]hen a party fails to respond to a summary judgment motion regarding a claim, the party essentially concedes that summary judgment in favor of the moving party is appropriate." Harris v. hhgregg, Inc., 2013 WL 1331166, at *4 (M.D.N.C. Mar. 29, 2013). However, the Court will nonetheless address whether Plaintiff has satisfied his burden to demonstrate a *prima facie* case of retaliation under § 1981, as did the Middle District of North Carolina in the Brand v. North Carolina Dep't of Crime Control & Public Safety case: "Even if the court considers the evidence concerning [a claim to which Plaintiff failed to respond to argument regarding the appropriateness of summary judgment on such claim in Defendant's motion], [] Plaintiff would fail to survive summary judgment because his evidence is insufficient to make out a *prima facie* case" on the claim. 352 F. Supp. 2d 606 (M.D.N.C. Dec. 15, 2004).

1981…through…the McDonnell Douglas burden-shifting framework"). Plaintiff must prove three elements to establish a *prima facie* retaliation claim under § 1981:

> (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action.

Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004). A plaintiff can satisfy the first element when he alleges "reporting employment actions actually unlawful under [§ 1981] but also employment actions [he] reasonably believes to be unlawful." Ali v. BC Architects Eng'rs, PLC, 832 F. App'x 167, 172 (4th Cir. 2020).

Defendant acknowledges that Plaintiff meets the first two elements of a *prima facie* retaliation claim. (Document No. 29-1, p. 21). Specifically, as to Giles' protected activity, Defendant cites to Giles' deposition.[6] During his deposition testimony, Giles allegedly indicated "that he submitted an internal complaint to Amtrak in April 2015, after he was suspended," in which "he alleged differential treatment compared to Martino." Id. at p. 21, n.9. Giles also allegedly "submitted an EEOC intake questionnaire in April 2015, in which he [] alleged differential treatment compared to Martino." Id. Moreover, Plaintiff also satisfies the second element – he undoubtedly was subject to the adverse employment action of termination. Therefore, the undersigned finds that Plaintiff satisfies elements one and two of the *prima facie* retaliation claim.

---

[6] Notably, and perhaps tellingly, Plaintiff does not cite to his engagement in these instances of reporting alleged discrimination against Amtrak, either in his Complaint or his response brief to Defendant's summary judgment motion. Thus, the undersigned is all the more persuaded that even where Plaintiff *may* have intended to state a § 1981 retaliation claim in his Complaint, he fails to satisfy the critical elements of a *prima facie* case.

The third element, though, is where Plaintiff's (potential) claim fails. On the causal link required to satisfy the third element of the *prima facie* retaliation claim, ordinarily, Plaintiff must prove that the decisionmaker responsible for Plaintiff's termination had knowledge of his having engaged in protected activity and *also* show temporal proximity between the protected activity and the termination. Pettis, 592 F. App'x at 160-61; see also Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("by definition, an employer cannot take action because of a factor of which it is unaware, [and thus] the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case"). Sometimes, temporal proximity alone demonstrates the causal link – but only where the time between the adverse employment action and the protected activity is "very close." Clark Cty. School Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'").

Seven months (between the alleged protected activity in April 2015 and termination in November 2015), as was the length of time in the present case, is too long, based on recent case law from the Fourth Circuit finding that three months is too long. Ali, 832 F. App'x at 173. Evidently then, there is no temporal proximity present. Plaintiff also fails to prove that the individual responsible for terminating him had knowledge of the two instances of potential protected activity (which the undersigned again highlights, Plaintiff does not even mention – Defendant points these instances out in its memorandum supporting its summary judgment motion). In his deposition testimony, Giles acknowledges that Amtrak Deputy General Manager

17

Thomas Kirk was the individual responsible for firing him. (Document No. 29-3, p. 44); see also (Document No. 29-1, p. 8). As Defendant states, "Giles has presented no evidence that Kirk, the decision-maker, was aware of Giles' internal complaint or his EEOC intake questionnaire." (Document No. 29-1, p. 21). It is obvious that if Plaintiff never even makes mention of these activities in his Complaint or response brief, surely then, Plaintiff has not proved Kirk's *knowledge* of such activities.

The undersigned concludes that Plaintiff fails on the third element of a *prima facie* retaliation claim under § 1981, and he thus fails to prove a *prima facie* claim for retaliation. For the same reason that the discriminatory disparate treatment claim fails on the pretext showing, so too does any potential retaliation claim that Plaintiff intended to state fail because he cannot show that Amtrak's reason for firing him was pretextual and instead motivated by retaliatory animus in violation of § 1981. The undersigned will not recount here every reason why the showing of a genuine dispute of material fact on Plaintiff's part fails with respect to pretext. Undoubtedly, Defendant is entitled to summary judgment on Plaintiff's § 1981 retaliation claim.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion For Summary Judgment" (Document No. 29) is **GRANTED.**

**SO ORDERED**.

Signed: July 14, 2021

David C. Keesler
United States Magistrate Judge